## POLICY VOIDED BY FALSE WARRANTIES.

Circuit Court of Cuyahoga County.

## THE SUPREME LODGE KNIGHTS AND LADIES OF HONOR v. LOUISE KOPITTKE.

Decided, June 15, 1906.

*Mutual Benefit Insurance—False Warranties in Application—Whether Material or Immaterial Voids Policy.*

Where a party in order to effect insurance upon his life, states that the answers and declarations made by him in his application to participate in a benefit fund of a fraternal society and in his medical examination are true, and agrees that they are to be treated as warranties and made a part and parcel of the contract and that if untrue the policy shall be void; *Held*: That the society is not liable if any of the statements are untrue and that the agreement of the parties removes the question of the materiality of the warranties from the consideration of the jury.

HENRY, J.; WINCH, J., concurs; MARVIN, J., dissents.

This proceeding was commenced to reverse a judgment recovered by the defendant in error, in an action for a death benefit upon a certificate of membership issued to her husband, John C. Kopittke, January 14, 1903, by the Supreme Lodge Knights and Ladies of Honor, a fraternal order, the plaintiff in error here.   John C. Kopittke died April 5, 1904, of an inflammation of the brain, which was not shown to be in any way referable to his previous infirmities concerning which it is claimed that he had made false representations when he took out his certificate.

Incorporated in the certificate itself is the following language:

"This relief fund certificate is issued upon the following conditions:

"First.   That the statements made by the member in the contract known as 'Application for Membership in Relief Fund' and answers to questions in applicant's statement to the medical examiner, known as 'Medical Examiner's Certificate,' upon the faith of which this relief fund certificate is issued are true and shall be treated as warrantees."

In the application for relief fund membership the decedent stated:

"I hereby agree and contract that my compliance with all the laws, rules and regulations covering said fund now in force, or that may hereafter be enacted by said order, and that my answers to the questions propounded or propounded by the medical examiner, are full, correct and true, as the expressed condition and warranty upon which I am to be entitled to participate in its relief fund as the constitution and laws of the order provide."

The decedent further stated in his application:

"I hereby warrant the foregoing statement, and each of them, and also the statements and answer to questions in my medical examination, to be true and correct. I expressly contract and agree that any untrue statement or answer, or my suspension, or expulsion from, or voluntarily severing my connection with the order, shall forfeit the rights of myself and my family or dependents, to all benefits and privileges therein."

In the medical examiner's certificate we find the following questions and answers:

"Q. Has the applicant undergone any surgical operation? A. No.
"Q. Have you had any serious illness, local disease, or personal injury? A. No.
"Q. Have you fully recovered? A. Never sick.
"Q. How long since you were attended by a physician, or have personally consulted one? A. A long time.
"Q. For what disease? A. Nothing except slight cold.
"Q. Give name and residence of physician? A. None."

Kopittke answered "no" to all other questions as to whether he had had any disease, and closed the applicant's statement to medical examiner as follows:

"I hereby declare that I am the person whose name is written upon the second page of this statement * * * and that the answers as written herein are as given by myself to the medical examiner and that I have not made any mis-statements or concealed facts in relation to my past or present condition."

As a matter of fact he had undergone a slight surgical operation, three years before at the Huron Street Hospital Clinic,

for the removal of a very small suppurating gland in his neck. Anaesthesia was administered to him and he remained at the hospital over night. This trouble had existed for perhaps two months, and he was under occasional observation of the surgeon for several weeks.

The jury, moreover, in answer to interrogatories specially found that the deceased had undergone a surgical operation about May 5th, 1900; but their general verdict was for the plaintiff, the trial judge having charged them, in part, as follows:

"Notwithstanding the express provision in the certificate of membership and the application for membership as to such statements and answers being warranties, it is not the policy of our law to treat them as strict warranties, so that if there be any slight or trivial mis-statement of faet therein, the policy will be avoided however immaterial to the risk proposed to be assumed such mis-statement may be. Although the answer to a question is untrue in effect, it will not necessarily avoid the policy, unless the fact untruly stated, or denied, be material. It is for the jury to say from the testimony whether or not the decedent gave any full and untrue answer to questions propounded to him in the suit referred to, and if so. whether or not such mis-statement was material in the sense I have explained to you."

This charge is assigned as error, and we think it is erroneous. In *Aetna Life Insurance Co.* v. *France et al,* 91 U. S., 510, the syllabus is:

"Where a party, in order to effect an insurance upon his life, agreed that if the proposal, answers, and declarations made by him—which he declared to be true, and which were made a part and parcel of the policy, the basis of the contract, and upon the faith of which the agreement was entered into—should be found in any respect untrue or fraudulent, then, and in such case, the policy should be null and void; *Held:* That the company was not liable if the statements made by the insured were not true.

"The agreement of the parties that the statements were absolutely true, and that their falsity in any respect should void the policy, removes the question of their materiality from the consideration of the court or jury."

And this is quoted with apparent approval in *Insurance Co.* v. *Pyle,* 44 O. S., 19, 30. True the syllabus states the rule less broadly than in the former case, but this was evidently because the facts did not require the application of the principle in its full breadth. The undeniable severity of this rule caused the enactment of Section 3625, Revised Statutes, which abrogates it with respect to life insurance companies generally, as pointed out in *Life Ins. Co.* v. *Warren,* 59 O. S., 45, 53. But this section can have no application here because fraternal orders are expressly exempted from its operation by Section 3631-14, Revised Statutes.

It is urged, however, that the term "surgical operation" must not be taken in its technical sense, which would involve the absurdity of including such trivial matters of domestic surgery as the pricking of a boil or the picking out of a sliver; and that the jury should be allowed, under proper instructions, to find that the removal of a suppurating gland the size of a shot under the skin of the neck is not within the common understanding of the phrase in question, though they are without instructions, -for none were asked, as to the proper significance of the words. Presumably they used their common understanding when they adopted and approved the language of counsel and witnesses in thus describing the incident referred to. And we can not say that an occurrence such as this, in which Kopittke deliberately went to a hospital clinic, was anaesthetized, and suffered the application of the knife to his neck for the healing of a small but persistent and discharging sore, remained over night at the hospital to recuperate and continued under the surgeon's supervision for some weeks in all, is not enough to impress the patient and every one else aware of the facts, that a surgical operation has taken place, somewhat trivial it may be, but unmistakable to every one of common understanding, professional and lay minds alike.

It was thus an untrue representation which Kopittke made, and the truth of which he expressly agreed should be regarded as a condition on the faith whereof his certificate was issued, when he stated that he had never undergone a surgical opera-

tion and that he had not consulted a physician for a long time and then only for a cold. We hold that this prevented any right to participate in the relief fund from arising under the provisions of the certificate and application; and that the court's charge as quoted is erroneous and that the judgment must therefore be reversed. And upon the indisputable facts as shown by documentary evidence and the special .findings of the jury we now proceed to render the judgment which the court of common pleas should have rendered and enter final judgment for plaintiff in error.

---

## REVIEW OF JUDGMENT DEFEATED BY DEATH OF STENOGRAPHER.