LOEHR, Respondent, vs. SUPREME ASSEMBLY OF THE EQUITABLE FRATERNAL UNION, Appellant.

*May 23—June 20, 1907.*

*Life insurance: Forfeiture: Benefit societies: False statements in application.*

1. A benefit certificate was issued by defendant to an applicant for insurance on the faith of his written application in which he stated that he had never had rheumatism, that he had never been sick, that no facts affecting his life risk were withheld, and that he warranted such statements to be true and agreed that any false statements or suppression of facts in the application should forfeit all rights of himself or his beneficiaries to all benefits. The application was made part of the contract. There was evidence that he had stated to the examining physician that he had had one attack of rheumatism, but it was proved that he had had three severe attacks of inflammatory rheumatism in different years before applying for the insurance, of which the examiner had no knowledge; that if this fact had been known the certificate would not have been issued; and that inflammatory rheumatism was the indirect cause of death. *Held*, that all rights under the certificate were forfeited.

2. Even if there was a waiver in respect to the illness of which the examiner was informed, it could not extend to other facts of which no agent of defendant had any knowledge.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

This action was brought on a benefit certificate issued by

defendant to plaintiff's husband, Mathias Loehr.    The defendant is a fraternal assessment society.    Under its constitution and by-laws written application is required to be made for membership in the association and for mortuary benefit.    Mathias Loehr applied in writing and signed an application for a $2,000 mortuary benefit, on which application was issued the benefit certificate in question.    The defense was breaches of warranties contained in the application and benefit certificate.    The plaintiff is the beneficiary under the certificate.

After the evidence was in defendant moved for a directed verdict, which was denied.    The only facts found by the jury were that the deputy of defendant knew at the time he received the application of the insured from Dr. Mears and forwarded it to the defendant that the insured had had rheumatism; that there was no collusion between the deputy and the insured to defraud the defendant; that the insured informed the examining physician, Dr. Mears, that he had had rheumatism.

Motions were made for judgment on the verdict and for judgment notwithstanding the verdict and for a new trial, which were denied, and due exceptions filed to the denial of each motion as well as to the denial of the motion to direct a verdict for defendant, made at the close of the evidence. Plaintiff's motion for judgment on the verdict was granted, and judgment entered in favor of plaintiff for $1,511 damages and $62.24 costs, from which judgment this appeal was taken.

For the appellant there were briefs by *Thompson, Thompson & Pinkerton,* and oral argument by *John C. Thompson.*

For the respondent there was a brief by *Reilly, Fellenz & Reilly,* and oral argument by *M. K. Reilly.*

KERWIN, J.    The main question presented by the assignment of errors involves the sufficiency of the proof to entitle

plaintiff to recover. It was established upon the trial that on September 20, 1904, Mathias Loehr applied in writing for membership in defendant's order for a $2,000 mortuary benefit. In the application the insured stated, among other things, that he had never had rheumatism or gout. After answering a long list of questions as to whether insured had any of the various diseases stated in the application, the following question was put: "Give full particulars of above, or any other illness or injury you have had, giving date, duration and effects, if any remain, together with name and address of medical attendant." To which he answered: "Never been sick." The application also contained the following: "That the statements herein recorded are true, and that no facts known to me affecting my life risk are withheld, and I hereby consent and agree that any false statements or suppression of facts in this application . . . shall forfeit all the rights of myself or my beneficiaries to all benefits therein." And at the end of the answers to the questions in the application the insured stated: "I hereby warrant that my answers to the foregoing questions are true, and are accurately recorded by the medical examiner."

This application was passed upon by the supreme medical examiner of defendant, and the benefit certificate or contract sued upon contained a copy of the application, together with a condition that it was "made in consideration of the written and printed application and medical examination for membership in this association with the agreements, statements, and warranties therein contained, which are hereby made a part of this contract." This benefit certificate was accepted by the insured in writing as follows: "I accept this contract on the conditions named therein. Mathias Loehr;" and remained in his possession until he died upwards of two months after it was accepted. It was also established that the insured, Mathias Loehr, had several severe attacks of inflammatory rheumatism before the issuance of the certifi-

cate, one in 1901, one in 1902, and one in 1903, during which time he was confined to his house and attended by a physician, that he suffered during his last illness from acute inflammatory rheumatism, and that inflammatory rheumatism was the remote cause of his death, the immediate cause being heart failure accompanied by cardiac asthma.

The plaintiff proved on the trial that in September, 1904, when the local physician examined the insured and took his application, he told him his health had always been good, with the exception that a year before he had been up north hunting and came back, contracted a cold, and got bunged up with grippe and rheumatism, but said he had gotten all over it. There is no evidence that insured made any statement about the attacks of inflammatory rheumatism in 1901 or 1902, or of any other illness except that of 1903. The finding of the jury that insured informed the examining physician that he had had rheumatism obviously was based upon the evidence of the 1903 illness, because there is no evidence that the insured informed the examining physician or any agent of the defendant of any other illness. Nor is there any evidence that defendant or any agent was informed that the attack in 1903 was inflammatory rheumatism, or that it was severe—simply a cold, grippe, and rheumatism. The witness said he thought Loehr said it settled into rheumatism. The supreme medical examiner of defendant testified that defendant had never accepted applicants who had suffered from attacks of inflammatory rheumatism, and would not have passed Loehr knowing the facts. There is no evidence that defendant or any of its officers ever knew prior to Loehr's death that he had inflammatory rheumatism or that he had any illness before 1903. And it is established that the insured had the two severe attacks of inflammatory rheumatism in 1901 and 1902, and that inflammatory rheumatism is a dangerous and infectious disease, often producing diseases of the heart.

The local examiner had no authority to pass upon the ap-

plication.   His authority was merely to take the application and examine and report the same through the deputy to the supreme medical examiner for his approval or rejection. The insured could read English, and it does not appear that he was in any way misled as to the contents of the application.   He obtained the benefit certificate on the faith of the application and the declarations and warranties therein contained.   In it he warranted that the statements therein contained were true, and that the answers to questions were true and accurately recorded by the medical examiner; that no facts known to him affecting his life risk were withheld; and further, agreed that any false statement or suppression of facts should forfeit all rights of himself or his beneficiaries to all benefits.   Upon the undisputed evidence we see no escape from the conclusion that the plaintiff cannot recover.

Passing the question of whether the defendant was bound by the alleged statements which it is claimed by plaintiff were made by the insured to the local examiner respecting illness in 1903, and which are contrary to the application, the evidence is undisputed that the insured did not tell half the truth.   His statement, according to the plaintiff's own evidence, of the 1903 illness was misleading.   Besides, he suppressed wholly the facts respecting the serious attacks of inflammatory rheumatism in 1901 and 1902, which were most material, and if known would have prevented him from obtaining the contract.   It is not even claimed by plaintiff that the local examiner or the defendant had any knowledge of these attacks.   So it is established without dispute that the insured withheld and suppressed facts known to him affecting the risk and made false statements in the application, and thereby upon well-settled principles forfeited all rights of himself or his beneficiaries.   *Baumgart v. Modern Woodmen,* 85 Wis. 546, 55 N. W. 713; *McGowan v. Supreme Court I. O. of F.* 107 Wis. 462, 83 N. W. 775; *New York L. Ins. Co. v. Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837.

We do not find it necessary to treat the question of waiver, relied upon and discussed by counsel for respondent, further than to say that it could not in any event extend to facts of which the agent had no knowledge. *Rasmusen v. New York L. Ins. Co.* 91 Wis. 81, 64 N. W. 301; *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563. Whether there was any waiver respecting the illness in 1903, or whether the local examiner or deputy had any authority to waive, or whether knowledge on the part of the local examiner of facts contrary to those stated in the application would bind the defendant, we do not decide. The evidence is undisputed that no agent of the defendant had any knowledge of the severe attacks of inflammatory rheumatism in 1901 and 1902, and the false statements and suppression of facts by the insured respecting these attacks forfeited all rights under the benefit certificate. *New York L. Ins. Co. v. Fletcher, supra; Baumgart v. Modern Woodmen, supra.* It follows from what has been said that defendant was entitled to judgment and that its motion for judgment should have been granted.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with instructions to enter judgment for the defendant.