SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, *Plain-
tiff in Error,* v. ANNA MCDONALD, *Defendant in Er-
ror.*

1. A clause in a certificate of life insurance which requires
   preliminary proof of death ninety days before suit shall
   be brought upon the certificate, may be waived by the in-
   surer and in case of such waiver suit may be brought
   ninety days after the death of the insured.

2. Where a party is not injured by the rulings of a Trial
   Court upon his pleas and is not prevented from submitting

the subject and matter of such pleas to the Jury under such pleadings as secure to him the full benefit of his contentions, such rulings of the Court do not present good ground for reversal.

3. Conditions precedent to the maintenance of a cause may be alleged by the complainant in general terms to have been complied with, but if the defendant desires to contest the fact of compliance by the plaintiff with any one or more of such conditions he must aver in his plea definitely and specifically what conditions the plaintiff has not complied with and which are made the subject of contest.

4. The purpose of all pleading under the system in force in this State is to arrive quickly and definitely at a certain and single material issue upon which the controversy may be determined.

5. Where an application for a certificate of life insurance in a fraternal life insurance company contains a clause certifying, agreeing and warranting that the applicant is in sound health, of temperate habits and has no disease or injury that will tend to shorten his life, and that the application to which he attaches his signature shall constitute the basis for and form a part of the beneficiary certificate, and further agreeing, certifying and warranting that all the statements, representations and answers in the application are full, complete and true, and that any untrue statement or answer made by the applicant, or any concealment of facts in the application, intentional or otherwise, shall render the certificate void, and the certificate afterwards issued upon such application declares that the application constitutes the contract or agreement between the insurer and the insured, the statements and representations made by the applicant concerning his health and habits and the absence of injury or disease that will tend to shorten his life are warranties, and if such statements were untrue as made in the application they operate to defeat a recovery upon the certificate of insurance.

6. The burden of proof is upon the insurer who pleads a breach of warranty to a declaration upon a certificate of life insurance.

7. A demurrer to a replication reaches back to a plea to which the replication is made.

Judgment reversed.

*A. B. & C. C. Small*, for Plaintiff in Error;

*Cone & Chapman*, for Defendant in Error.

ELLIS, J.—The defendant in error brought an action in the Circuit Court for Columbia County against the Sovereign Camp of the Woodmen of the World upon one of its beneficiary certificates which it had issued to C. L. McDonald, who was husband to Anna McDonald. The certificate was for two thousand dollars, but it contained a provision that the member of the fraternity upon whose life the certificate was issued was entitled to participate in the beneficiary fund to the amount of one thousand dollars should his death occur during the first year of his membership. This certificate was issued in October, 1914.

McDonald died, so the declaration alleges, on May 27, 1915. The certificate also provided for the payment of one hundred dollars for the erection of a monument to the memory of the insured in case of his death.

The beneficiary certificate was attached to the declaration and by appropriate words made a part of it.

The certificate contains a provision to the effect that it is issued and accepted subject to all the conditions on the back of it, and a statement to that effect was signed by C. L. McDonald. One of the conditions or agreements

on the back of the certificate was as follows: "5th. No legal proceedings for recovery under this certificate shall be brought within ninety days after the receipt of proof of death by the sovereign clerk, and no suit shall be brought upon this certificate unless said suit is commenced within one year from the date of death."

The declaration alleged that the plaintiff within a "few days" after the death of C. L. McDonald did procure ana reduce to writing proof of his death and delivered the same to the sovereign clerk of the defendant, who received the same according to the conditions and stipulations of the certificate. That within a "few days" thereafter without "further objections to formalities of notice and proof of death" the defendant denied its liability.

The action was begun on the 20th day of September, or on the one hundred and sixteenth day after the death of McDonald.

A demurrer to the declaration was interposed on behalf of the defendant upon the ground that the declaration did not show that the condition quoted had been complied with, and that the declaration affirmatively showed that the plaintiff had violated the agreement by bringing the action within ninety days after the receipt of the proof of the death of McDonald by the sovereign clerk. The demurrer was overruled and such action is assigned as the first error.

Was the unqualified denial of liability by the defendant a waiver on its part of the agreement or condition that no legal proceedings for recovery under the certificate should be brought within ninety days after the receipt of proof of death by the sovereign clerk of the defendant?

The clause quoted is for the benefit of the insurer and is intended to secure for him reasonable time in which

to examine into the proofs of death and make independent investigations as to his liability upon the contract of insurance if he so desires. We do not regard the agreement as one which definitely fixes the maturity of the debt, like a promissory note. The debt matures upon the happening of the event named in the policy or certificate, that is the death of the assured, where the holder has complied with the requirements of the order. See Sovereign Camp, W. O. W. v. Hodges, 72 Fla. 467, 73 South. Rep. 347.

The agreement that proceedings shall not be brought upon the certificate within a certain time after proof of death submitted is binding upon the beneficiary, but it affects the remedy only and may be waived by the insurer. Now an unqualified denial of liability waives preliminary proof of loss or death required by the policy. If proof of loss or death is waived, it is unnecessary to submit it. If it is unnecessary to submit it, it follows that so far as the clause refers to proof of death, as a time from which the right to sue accrues, it has been waived by the insurer and made as if it did not exist. To hold otherwise would be to say that waiver of preliminary proof of death could not be made by the insurer. The defendant refused to pay at all and based its refusal upon some ground distinct from regularity of proof of death, or as the declaration alleges, without "further objections to formalities of notice and proof of death."

If the beneficiary had verbally notified the clerk of the defendant of the death of the certificate holder and the defendant thereafter had by letter denied liability upon the certificate and expressly waived preliminary proof of death, it would be vain to say that preliminary proof must nevertheless be submitted in order that the defendant's liability on the policy might mature, because that

would be equivalent to saying that preliminary proof of death could not be waived. But it is nowhere contended that such proof cannot be waived. That preliminary proof of death was submitted before unqualified denial of liability on the certificate cannot alter the effect of the waiver, which renders such proof unnecessary. See Knickerbocker Life Ins. Co. v. Pendleton, 112 U. S. 696, 5 Sup. Ct. Rep. 314; Columbus Mut. Life Ass'n v. Plummer, 86 Ill. App. 446; Phillips v. United States Ben. Soc. 120 Mich. 142, 79 N. W. Rep. 1. Even if the unqualified denial of liability by the insurer is not a waiver of the entire clause, which restrains all legal proceedings within ninety days, the time would run from the date of the death of the assured, which is the holding of the Iowa court, upon whose utterances on this point the text in Bacon's Life and Accident Insurance, Sec. 619, cited by counsel for plaintiff in error seems to rest.

In McConnell v. Iowa Mut. Aid. Ass'n, 79 Iowa 757, 43 N. W. Rep. 188, Judge BECK, speaking for the court, said: "If repudiation of liability dispenses with proof of death, it cannot be said that the denial is such a repudiation of the contract as to authorize an action to be commenced prior to the time it is authorized by the terms of the policy." We reach the conclusion, said he, "that plaintiff could not have commenced his action sooner than forty days after the death of the assured."

In this case action was commenced more than ninety days after the death of the assured, and preliminary proof of death was waived. See Taylor v. Glens Falls Ins. Co., 44 Fla. 273, 32 South. Rep. 887.

If the waiver was not a repudiation of the entire contract and the defendant could yet claim its ninety days from the date of the death of the assured, as the Iowa court holds, it appears that this action was not prema-

turely brought, as the defendant contends, and the demurrer was correctly sustained. So the first assignment of error must fail.

The second assignment of error rests upon an order of the court sustaining a demurrer interposed by the plaintiff to the second pleas of the defendant to the first and second counts of the declaration. These pleas in substance averred that C. L. McDonald in his application for the beneficiary certificate represented agreed and warranted that he was not then and had never been affected with the disease of tuberculosis, commonly called consumption, nor the disease of gonorrhea, and that for five years past he had consulted and been attended by only one physician; that such representations, agreements and warranties were false; that they were known to him at the time they were made to be false; that at the time of the application McDonald was then and had been for a long time affected with both diseases and had within the past five years consulted and been attended by more than one physician, and that McDonald had died on account of the said diseases, or one of them.

A copy of McDonald's application for the beneficiary certificate was attached to the pleas, and by appropriate words made a part of them.

The second count of the declaration was based upon a claim for attorneys' fees for the plaintiff, which the plaintiff claimed was provided for by the statutes of the State of Florida.

It appears to us that the pleadings in this case, so far at least as the defense presented by the above pleas is concerned, are involved in unnecessary entanglements. After the court sustained the demurrer to these pleas the defendant availed himself of the same defense by "amended and additional pleas" numbered three, four

and five to the first count, and pleas numbered four, five and six to the second count. These pleas were identical and dealt respectively with the "representations, agreements and warranties" by the applicant, C. L. McDonald, as to the diseases of consumption and gonorrhea, and as to his having consulted or been attended during the past five years by only one physician. In other words, the subject of the two second pleas to the first and second counts of the declaration was split up and divided into three defenses and made the subjects of the above numbered pleas. It was averred in amended pleas three and four to the first count and four and five to the second count that the applicant died of the disease which was named in those counts respectively.

Other pleas were also interposed by the defendant, among which were the following: The additional fifth plea to the first count averred that the applicant's representation that he had consulted or been attended by but one physician within five years was untrue; the sixth plea to the first count averred that the applicant's representation that he had never had consumption was untrue, but did not aver that he died from that disease; the seventh plea to the first count averred that the applicant's representation that he had never had either the disease of consumption or gonorrhea was untrue and that he actually died from and on account of one or both of such diseases. The sixth plea to the second count was the same as the fifth plea to the first count; the seventh plea to the second count was the same as the sixth plea to the first count, and the eighth plea to the second count was the same as the seventh plea to the first count. Demurrers to these pleas interposed by the plaintiff on the 24th of April, 1916, were overruled by the court on August 14, 1916, as to the third and fourth pleas to the first

count and fourth and fifth pleas to the second count, but sustained as to all the other above mentioned pleas.

It appears, therefore, from these rulings that the defendant was permitted to interpose the defense that the applicant's representation that he had never had the disease of consumption or gonorrhea was untrue and that he actually died from one of such diseases. But that he was denied the defense that the mere representation that he had never had either disease was untrue, as also the defense that his mere representation that he had not consulted or been attended by more than one physician within five years was untrue, but that he had consulted and been attended by more than one physician during that time for diseases from which he suffered at the time of his application other than constipation. The fifth plea to the first count and the sixth plea to the second count, demurrers to which were sustained, averred that the applicant represented that he had consulted and been attended by only one physician within the past five years and that only for the disease of constipation, that such representation was untrue, that the truth was he had consulted and been attended by other physicians for diseases from which the applicant at the time of his application was suffering other than the disease of constipation, which fact if it had been known to the defendant it would have declined to issue the certificate.

Issue was joined by the plaintiff upon the third and fourth pleas to the first count and fourth and fifth pleas to the second count.

As the defendant got the benefit of the same defense by its third and fourth additional pleas to the first count and fourth and fifth pleas to the second count as it would have gotten had the second pleas to both counts been permitted to stand, it was not injured by the ruling upon the

demurrer, which was made the basis of the second assignment. See Williams Co. v. Pensacola, St. A. & G. S. S. Co., 57 Fla. 237, 48 South. Rep. 630; Parkhurst v. Stone, 36 Fla. 456, 18 South. Rep. 594; Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922. The demurrer to these pleas attacked also pleas numbered eighth, nine, ten and eleven to the first count, and nine, ten, eleven, twelve and thirteen to the second count. The third assignment of error rests upon the order made August 14, 1916, upon the plaintiff's demurrer. So by that order all pleas to the first count numbered from five to eleven and all pleas to the second count numbered from six to thirteen were held to be bad. This order affecting the validity of fifteen pleas is made the basis of one assignment of error and counsel in their brief discuss the demurrer as it applies to each plea.

Pleas numbered from eight to eleven, inclusive, to the first count, and from nine to thirteen, inclusive, to the second count are not good. The demurrer as to them was properly sustained.

The eighth plea to the first count denied that the application for the certificate was made by McDonald in accordance with the rules and by-laws of the defendant; the ninth plea denied that McDonald had complied with all the conditions of the contract of insurance; the tenth plea denied that his death entitled the plaintiff to the payment of the stipulated sum by the defendant, and the eleventh plea denied all the allegations of the declaration. The pleas numbered from nine to thirteen, inclusive, to the second count are of the same nature and bent. It is contended in behalf of the defendant that these pleas separately traverse certain material allegations of the declaration, but it is not pointed out what material allegations were thereby denied. Because a declaration con-

tains many allegations it does not follow that they are all material. If the application for the certificate was not made in accordance with all the rules, by-laws and constitutions of the defendant, the fact remains that the certificate was issued and the contract entered into. Conditions precedent may be alleged by the plaintiff to have been complied with in general terms, but good pleading and our statute require the defendant to specify with particularity just what condition was not complied with by the plaintiff and which one the defendant intends to contest. A mere denial that the insured's death entitled the plaintiff to recover has no merit as a plea and no place in the books which deal with a system of common law pleading. The purpose of all pleading under the system in force in this State is to arrive quickly and definitely at a certain and single issue; but the above pleas, like an ancient and disused fire arm, were designed to scatter.

There is left on this assignment of error, however, the question whether the subjects of the fifth, sixth and seventh pleas to the first count, and the sixth, seventh and eighth pleas to the second count constituted good defenses to the declaration. It is averred in those pleas that McDonald made a written application to the defendant for a beneficiary certificate and in such application "certified, agreed and warranted" that all the statements, representations and answers in the application were full, complete and true, and that in such application he agreed that any untrue statement or answer made by him in his application or to the examining physician, whose report was made a part of the application, and any concealment of fact, intentional or otherwise, should render the beneficiary certificate void and all of the rights of any person thereunder should on account

thereof be forfeited. It is averred that the application was received and the certificates issued by the defendant upon such express conditions; that is to say, if any of the statements or declarations in the application should be found in any respect to be untrue that the certificate should be null and void and of no effect. The pleas then aver respectively that McDonald represented that he had not within the past five years consulted or been attended by but one physician, and then only for the disease of constipation, which representation was untrue; that he had within such time consulted other physicians for diseases with which McDonald was suffering at the time of his application other than constipation; that McDonald represented that he was in sound bodily health and had no disease that would shorten his life and that he had never had the diseases of consumption, which representation was untrue; that he represented that he had never had the disease of consumption or gonorrhea, which statement was untrue; that at the time of the application he was suffering from both diseases and had been for a long time prior thereto, and that McDonald from and on account of the disease of "consumption and the disease of gonorrhea or one of them complicated by the other actually died."

The demurrer to the seventh plea to the first count was sustained probably because it was considered to be uncertain or double, in that it did not specifically aver that McDonald died of one disease or the other, but that he died of one of the diseases named complicated by the other, or it was considered that the defendant had the full benefit of the plea in pleas three and four.

The application of McDonald for a beneficiary certificate, a copy of which is attached to the pleas and made a part of them, contains the following language: "I here-

by certify, agree and warrant that I am of sound bodily health and mind; that I am temperate in habits and have no injury or disease that will tend to shorten my life. I hereby consent and agree that this application, consisting of two pages, to each of which I have attached my signature, the examining physician's report and all the provisions of the Constitution and Laws of the Order, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not. * * * I hereby certify, agree and warrant that all the statements, representations and answers in this application, consisting of two pages as aforesaid, are full, complete and true, whether written by my own hand or not; and I agree that any untrue statements or answers made by me in this application or to the examining physician, or any concealment of facts in this application or to the examining physician, intentional or otherwise, * * * my beneficiary certificate shall become void and all rights of any person or persons thereunder shall be forfeited."

It is contended in behalf of the defendant in error that the matters of fact set up in the pleas were not by agreement between the applicant and the insurer made warranties. We do not agree with cousel upon this proposition. It was expressly agreed that the applicant was in sound health and that he suffered from no disease that would tend to shorten his life; that all his statements, representations and answers contained in his application consisting of two pages are true, and that any untrue statement or answer or concealment of fact, whether intentional or otherwise, should avoid the certificate. The application consisted of three parts, as follows: 1st. The

general petition; 2nd. Questions to be answered by the applicant and which related to his family and personal history, each of these parts signed by the applicant; and, 3rd, the physician's report. The first part, or general petition, contained the express warranty that the applicant was in sound health, and the warranty that the "statements, representations and answers in this application" are true; the second part contained the statements, representations and answers of the applicant, which he warranted were true, and if untrue whether intentional or otherwise should avoid the policy. The facts stated in the pleas were thus by agreement of the parties made warranties. The statements themselves by common knowledge are deemed to be material to the risk, and by contract were made warranties. Price v. Phoenix Mut. Life Ins. Co., 17 Minn. 497; Royal Neighbors of America v. Wallace, 64 Neb. 330, 89 N. W. Rep. 758; McGowan v. Supreme Court, I. O. F., 104 Wis. 173, 80 N. W. Rep. 603; Aetna Life Ins. Co. v. France, 91 U. S. 510, 23 Law Ed. 401; Union Cent. Life Ins. Co. v. Cheever, 36 Ohio St. 201; Jeffries v. Economical Mutual Life Ins. Co., 22 Wall, (U. S.) 47, 22 Law Ed. 833; Metropolitan Life Ins. Co. v. Rutherford, 98 Va. 195, 35 S. E. Rep. 361; Eminent Household of Columbian Woodmen v. Prater, 24 Okla. 214, 103 Pac. Rep. 558, 23 L. R. A. (N. S.) 917. Where the answers to questions in an application for insurance are warranted true, and the matter inquired about would affect the assumption of risk, the warranty is material, notwithstanding the death may have been from accident or other cause totally disconnected from the matter inquired about. It goes in such instance to the validity of the contract itself. See Fidelity Mut. Life. Ins. Co. v, Beck, 84 Ark. 57, 104 S. W. Rep. 523; Leonard v. State Mut. Life Assur. Co., 24 R. I. 7, 51 Atl. Rep. 1049. Falsity, not fraud, is

the basis of liability on a warranty. Knights of Honor v. Dickson, 102 Tenn. 255, 52 S. W. Rep. 862, distinguishing between statements of fact and statements of opinion, holding that in the former case where the fact is made the basis of the contract it must be considered as a warranty. Schofield's Adm'x v. Metropolitan Life Ins. Co., 79 Vt. 161, 64 Atl. Rep. 1107; Hoover v. Royal Neighbors of America, 65 Kan. 616, 70 Pac. Rep. 595; Smith v. Supreme Lodge, Knights and Ladies of Golden Precept, 123 Iowa 676, 99 N. W. Rep. 553. The answers of an applicant for life insurance as to his present and past condition of health are material to the insurance risk proposed and must be true. Jeffrey v. United Order of Golden Cross, 97 Me. 176, 53 Atl. Rep. 1102; Callies v. Modern Woodmen of America, 98 Mo. App. 521, 72 S. W. Rep. 713. Materiality of statements determined by the contract. Royal Neighbors of America v. Wallace, 66 Neb. 543, 92 N. W. Rep. 897.

The statements of fact in the pleas viewed either in the light of representations or warranties constituted a good defense. For if regarded only as representations they were of a character most material and averred to have been untrue; but we regard them as warranties in view of the provisions of the certificate which declare the application for membership and medical examination of the member, etc., to constitute the contract or agreement between the society and the member. The statements are something more than representations merely tending to induce the insurer to assume the risk. By the terms of the certificate the application with other things constitute the agreement of insurance and by the application the insured warranted and agreed that his statements, representations and answers are "full, complete and true."

The defendant in error relies upon the case of Mouler v. American Life Ins. Co., 111 U. S. 335, 4 Sup. Ct. Rep. 466,

28 Law E. 447. The principle announced in that case and which pervades the views of the court upon the point is, that if upon a reasonable interpretation of the contract of insurance it appears that it was the intention of the parties to make the validity of the contract depend upon the truthfulness of the applicant's statements, then it is the duty of the court to enforce it according to its terms. For as Mr. Justice Hunt said in Jeffries v. Economical Mutual Life Ins. Co., *supra*: "The right to make contracts carries with it the right to determine what is prudent and wise, what is unwise and imprudent, and upon what point the judgment of the individual is subject to that of no other tribunal." If people will make contracts of insurance with corporations or fraternal societies whose low rate of insurance makes it necessary for them to guard their assets by every means which shrewd contracts may provide for limiting liability, they should at least be as nearly frank and truthful as the words of the contract require them to be. In order to obtain the benefit of a very low rate of life insurance the applicant "agrees and warrants" that his answers contained in his application are "full, complete and true," and that with other documents the application (those words) shall constitute the contract of insurance. There is no room for construction or interpretation here, as was the case in Mouler v. American Life Ins. Co. *supra,* where the language of the application and the policy was not so clear as to eliminate all ambiguity upon the point. Here the applicant warrants that his answers are true. This being a warranty it is no matter that it is impossible for him or any man to say that the germs of disease are not then in his system and have not been for many years. If he warrants that he is not suffering and has not suffered from disease, he agrees that the answer is true, and if

untrue shall relieve the company of liability. There is no legal objection to such a contract, and as the courts all say if such is the contract it shall be enforced.

The burden of proof is upon the defendant, it is true. It must prove the existence of the disease to establish the plea. In such an application it is not necessary for the applicant to answer many of the questions propounded. He does not promise to furnish information upon every point, he only agrees that whatever answer he gives, that answer shall be true; whatever representation he makes that representation shall be true. It is not necessary for him if he is ignorant of the presence of disease in his system to warrant that it is not present there. The rule is where warranties are clearly provided for they are so construed. Provident Saving Life Assurance Society of New York v. Llewellyn, 58 Fed. Rep. 940; Brady v. United Life Ins. Ass'n, 60 Fed. 727; Kelly v. Mutual Life Ins. Co. of New York, 75 Fed. Rep. 637; Rupert v. Supreme Court, U. O. F., 94 Minn. 293, 102 N. W. Rep. 715; Providence Life Assur. Soc. v. Reutlinger, 58 Ark. 528, 25 S. W. Rep. 835; Continental Ins. Co. v. Vanlue, 126 Ind. 410, 26 N. E. Rep. 119, 10 L. R. A. 845; Aloe v. Mutual Reserve Life Ass'n, 147 Mo. 561, 49 S. W. Rep. 553; Dwight v. Germania Life Ins. Co., 103 N. Y. 341, 8 N. E. Rep. 654; Boyle v. Northwestern Mut. Relief Ass'n, 95 Wis. 312, 70 N. W. Rep. 351; Johnson v. Maine & N. B. Ins. Co., 83 Me. 182, 22 Atl. Rep. 107; Baumgart v. Modern Woodmen of America, 85 Wis. 546, 55 N. W. Rep. 713; Knights of Maccabees of the World v. Shields, 156 Ky. 270, 160 S. W. Rep. 1043, 49 L. R. A. (N. S.) 853).

We think that the court was in error in sustaining the demurrer to the third, fourth and fifth pleas to the first count and the corresponding pleas to the second count,

and that the judgment should be reversed because of such error.

The fourth assignment of error which involves the question of the validity of the plaintiff's replication to certain pleas of the defendant in which it undertook to interpose the defense that action was brought within ninety days after the submission of proofs of death must fail, as it has been shown that the pleas are bad in that they do not aver that the action was brought within nine-. days from the death of the insured. The fifth assignment of error is also without merit. The court held that a demurrer to a replication reached back to the plea, and held the plea bad. It is contended that the statute, Section 1444, General Statutes, 1906, Florida Compiled Laws, 1914, has annulled the rule which has obtained in this State for so long, that a demurrer opens all previous pleadings and judgment will be given against the party who committed the first error. See Sanford v. Cloud, 17 Fla. 532; Stokes v. Baars, 18 Fla. 656; Bennett v. Herring, 1 Fla. 387; State ex rel. Fowler v. Finley, 30 Fla. 302, 11 South. Rep. 500; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Kirton v. Atlantic Coast Line R. Co., 57 Fla. 79, 49 South. Rep. 1024; Bellas v. Keyser, 17 Fla. 100; Murphy v. City of Jacksonville, 18 Fla. 318; Sylvester v. Lichtenstein, 61 Fla. 441; 55 South. Rep. 282.

Many of the above decisions were rendered long after the statute in question was first enacted, which was in 1861. It is not considered to have been the purpose of the Legislature by that act to abolish so salutary a rule of pleading, one which makes for a high standard of accuracy and precision in allegation and averment.

The remaining assignments of error involving the correctness of rulings in the admission and rejection of evi-

dence and the sufficiency of the evidence to support the verdict, we deem it unnecessary to discuss, as the judgment must be reversed for the error pointed out.

The judgment is reversed.

BROWNE, C. J., TAYLOR, WHITFIELD AND WEST, J. J., concur.